## Cambria County Liquor Licenses.   Appeal of Plummer et al.

*Liquor laws—License—Retail licenses—Determination of necessity—Order refusing licenses—Question on appeal.*

The duty of determining the question of the necessity for licenses to sell liquor is by the law imposed upon the judges of the court of quarter sessions. Where the court of quarter sessions consists of two judges, liquor licenses will be refused unless both judges concur in granting them.

Upon an appeal from an order refusing all applications for liquor licenses, the appellate court is limited to the ascertainment of the grounds upon which the court below based its decision. If the reason set forth is a legal reason, the order must be affirmed.

An order refusing to grant any liquor licenses in a county will not be reversed, as an abuse of discretion, where the judge of quarter sessions states his ground for refusal as follows: "We are, therefore, of the opinion that, under the facts as they appear to us, there is no necessity for the granting of any liquor licenses in the County of Cambria."

*Liquor laws—Volstead Act—Act of May 5, 1921—Hearing—Scope of examination—Refusal to attend hearing.*

In determining the question of necessity for liquor licenses, it was entirely proper for the court below to consider the fact that, under the Volstead Act, it would not be lawful for any person to whom a license issued to sell liquors containing one-half of one per cent, or more, of alcohol.

The act of assembly, approved May 5, 1921, (Woner Act), expressly recognizes the paramount authority of the acts of Congress passed pursuant to, and in the enforcement of, the 18th Amendment of the Constitution of the United States.

There was no abuse of discretion in the action of the court below in notifying all applicants for license that they would be examined upon the necessity for the license, fitness of the applicant, and violation of state and federal laws by the applicant.

28, (1921).]     Syllabus—Opinion of Court below.

Refusal of applications without a hearing would have been a manifest abuse of discretion. But, when the court afforded the applicants an opportunity for hearing, that was all it was required to do, and it might properly have refused the applications of all who refused to go into a hearing.

Argued October 26, 1921.   Appeals, Nos. 29 to 43, both inclusive, 47 and 53, April Term, 1922, by Bert Plummer et al., from order of Q. S. Cambria County, March Sessions, 1921, refusing all liquor licenses in Cambria County.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Affirmed.

Petitions for liquor licenses.

The judges of the court below filed the following opinions:

There were filed the following number of applications for license to sell liquor in this county during the year commencing March 16, 1921, to wit: 170 applications to sell at retail; 6 applications to sell at wholesale; and 4 applications to sell at wholesale as a brewery.   Five of the applications to sell at retail were withdrawn, and one to sell at wholesale as a brewery was withdrawn.

The applications to sell liquor at retail are made under the provisions of the Act of May 13, 1887, P. L. 108, known as the Brooks High License Law, and its supplements, and the applications to sell at wholesale under the Act of June 9, 1891, and its supplements.   Both of these acts were passed at a time when the licensee was permitted to sell, among other liquors, those which were intoxicating, as a result of which certain requirements as to fitness of the applicant and other matters were written into the law, and the courts of quarter sessions of the several counties authorized and empowered to pass upon such matters and grant licenses when in their judgment such licenses should be granted.

Both of the acts of assembly required the court to pass upon the fitness of the applicant, the necessity for the license, and both provided that a license would be revoked

upon a violation of any liquor law of this State by the licensee. As a result of this last-mentioned provision, the effect of the act would be to prevent the granting of a license to an applicant who had violated any of the liquor laws of this Commonwealth.

The duty of the court to pass upon the question of the necessity for a license and fitness of the applicant is provided for in section 2 of the Act of 1887, and section 6 of the Act of 1891 respectively.

The sections of the respective act which provide for the revocation of a license upon a violation of any liquor law of the Commonwealth, are respectively section 7 of the Act of 1887 and section 6 of the Act of 1891.

The Eighteenth Amendment to the Constitution of the United States, which became effective more than a year ago, prohibits the manufacture and sale of any intoxicating liquor, and the act of Congress, known as the Volstead Act, prohibits the manufacture and sale of any spirituous, vinous, malt or brewed liquor containing one-half of one per cent or more of alcohol by volume.

The federal law known as the Volstead Act is a part of the liquor law of this Commonwealth: Constitution of the United States, article VI, section 2; 36 Cyc., page 831, paragraph C.

The question of "necessity for the accommodation of the public" in the liquor laws of this State refers to a necessity or demand for the liquor that may be sold under the license applied for, and has no application whatever to any necessity for a place or building conducted as a hotel to furnish meals and lodging to the public.

The effect of the Eighteenth Amendment to the Constitution of the United States and the passage of the Volstead Act was, in so far as licenses to be granted in this State are concerned, to limit the liquors which might be sold under such licenses to those containing less than one-half of one per cent of alcohol by volume. In our opinion, the laws of Pennsylvania were modified or limited to this extent by this amendment and federal

statute just the same as if such an amendment had been made to the Constitution of Pennsylvania by the People of this State, and a statute had been passed by the legislature of this State which conflicted with the previous liquor laws to the same extent which the federal statute, known as the Volstead Act, interferes with such acts.

It makes no difference what the personal opinion of a judge or any citizen of this county may be as to the wisdom of the laws relating to the sale of liquor; the laws have been passed by the representatives of the people and as such must be recognized and obeyed by all good citizens, and the duties placed upon the court conscientiously performed.

For some time prior to the time fixed for the hearing of the application for liquor licenses, many of the newspapers of this State, numbers of responsible, conservative and reliable citizens, and many men engaged in the liquor business itself, had stated and reiterated openly that a large number of the persons holding liquor licenses from the court were selling liquors in violation of the Volstead Act and the liquor laws of this Commonwealth, and were using the liquor licenses granted by courts of the State as a cover under which to keep their places of business open. These statements had been so openly and repeatedly made that we considered that it was the duty of this court, under the obligations placed upon it by the legislature of this State, to require all applicants for license to appear before it and submit to an examination, and all applicants were notified that they would be required to appear before the court and submit to an examination upon any matters bearing upon the necessity for the license, fitness of the applicant, including the inquiry as to whether or not there had been any violation of any of the liquor laws of this State by the applicant, and that in this inquiry was included the question as to whether or not the applicant had violated the provisions of the Volstead Act. The applicants were further informed that if they saw fit they might withdraw

their applications and not be required to submit to an examination, but if they permitted their applications to stand and refused to submit to the examination, the presumption would be that they had violated the liquor laws of this State.

Following this announcement certain of the applicants, to the number of forty-three for license to sell liquor at retail, two for license to sell liquor at wholesale, and one for license to sell liquor at wholesale as a brewery, submitted themselves for examination. Of the applicants who submitted to the examination, however, there were fifteen for retail licenses who were new applicants, not having been in business during the preceding year, and one applicant for wholesale license who had not been in business during the preceding year. Two of the applicants who submitted to examination admitted violating the law. The remainder of the applicants (excepting two who were excused from appearing on account of illness), through their counsel, advised the court that they declined to submit to the examination, so that, in view of the notice given to the applicants, approximately two-thirds of the old applicants conceded, inferentially, that they have been violating the liquor laws of this State during the period to the examination. Of the twenty-eight old applicants for retail licenses who submitted to an examination, an investigation made by a representative of the court subsequent to the examination disclosed the fact that seventeen of them were at that time selling liquors in violation of the laws of this Commonwealth, and that one of the new applicants, who had no license, was selling in violation of the laws of this State. One new applicant admitted in his examination that he had been selling beer containing less than one-half of one per cent alcohol without a license, and seemed to be of the impression that this was entirely proper and permissible, and must have had in mind that the granting of a license would give to him the right to sell liquors having in excess of one-half of one per cent of alcohol,

notwithstanding the provisions of the federal statute known as the Volstead Act.

Of twenty-six applicants for wholesale liquor licenses, to whom licenses were granted last year, one exercised his license one month, three for three months, one for seven months, one for ten months, and thirteen did not lift their licenses at all. One applicant for a wholesale license admitted upon his examination that the business of his company, during the past year, had been only one-fifth of what the normal business had been prior to the passing and taking effect of the Volstead Act. A representative of one of the breweries stated that their business was about one-third of what it had been prior to the passing and taking effect of the Volstead Act. We are reliably informed that an applicant for a brewery license, which application has been withdrawn, gave as his reason for so doing that beer or brewed liquors prepared so as to be placed on the market with a content of less than one-half of one per cent of alcohol by volume, could not be made and sold at a profit. We have been personally informed by a number of reliable, responsible men engaged in the liquor business that the public will not purchase liquors containing less than one-half of one per cent of alcohol in sufficient quantities to pay the expenses of conducting the business. This would seem to be confirmed by the number of applicants who declined to submit to the examination, and from the investigation made as to the larger proportion, of those who did submit to an examination, for it is a fair presumption, as has been repeatedly stated in prior years in this court, that a violation of the liquor license laws of this State by a licensee was evidence of a lack of necessity for a license to conduct a legitimate business.

Considering as a whole all of the facts as indicated above, the conclusion is practically irresistible that there is no sufficient necessity or demand for liquors containing less than one-half of one per cent of alcohol by

volume such as to warrant and require the granting of liquor licenses by this court.

We are, therefore, of the opinion that under the facts as they appear to us there is no necessity for the granting of any liquor licenses in the County of Cambria, and so far as we, as one of the judges in this court are concerned, we make the following order and decree:

And now, March 7, 1921, all applications for the sale of liquor at wholesale and retail now pending before this court are refused.                    JOHN E. EVANS, Judge.

In making disposition of the several applications for license to sell vinous, spirituous, malt and brewed liquors at retail, wholesale and wholesale as a brewer for the license year beginning March 16, 1921, one member of this court, by a statement and reasons filed, March 7, 1921, has declared his opinion to be that there is no necessity for the granting of any liquor licenses in Cambria County, and so far as he, as one of the judges, is concerned, makes the following order:

"And now, March 7, 1921, all applications for the sale of liquor at wholesale and retail now pending before this court are refused."

As the other member of this court, suffice to say that I respectfully disagree with my learned legal brother as to his methods of procedure in disposing of the license applications, his findings of fact, as well as his conclusions of law.

I would, in the exercise of a sound judicial discretion, renew the license of the several licensed dealers at wholesale, retail and wholesale as brewers for the year 1921, subject to the limitations of the Eighteenth Amendment of the Federal Constitution, and the act of Congress based upon the same, except in case where it be shown, by competent evidence, that the law has been violated by the applicant, or that the license at the place designated was no longer necessary for the accommodation of the public.

28, (1921).] Opinion of Court below—Opinion of the Court.

The Court of Quarter Sessions of Cambria County is composed of two common pleas judges, and said judges being·divided in their opinion on the questions involved in these applications for licenses for the year 1921, there can be no affirmative action by the court and the several applications therefor necessarily fail of approval. In order that a proper record may be made up, showing the orders of the members of the court and the disposition of the said license applications, I as President Judge of the Court of Quarter Sessions, make the following order for the court:

#### ORDER OF COURT.

Now, May 3, 1921, after full hearing and upon due consideration, all applications for liquor licenses for the year 1921, are, for the reasons given above, refused, and the clerk of the court is directed to mark each and all of said license applications, both wholesale and retail. ......"Refused." By the court. MARLIN B. STEPHENS, President Judge.

*Error assigned* was the order of the court, quoting it.

*Philip N. Shettig,* and with him *F. J. Hartmann,* for appellants.—The action of the court below constituted an abuse of discretion, and, as such, was a violation of law: Schlaudecker v. Marshall, 72 Pa. 200; Roudenbusch's Petition, 120 Pa. 328; Venango County Liquor Licenses, 58 Pa. Superior Ct. 277.

OPINION BY PORTER, J., December 12, 1921:

These seventeen separate appeals are from orders refusing to grant the several appellants, respectively, license to sell liquor, some of them at wholesale and others at retail. They present the same questions and may be properly disposed of by one opinion. The final order which in each of the appeals is assigned for error was in this form: "Now, May 3rd, 1921, after full hear-

ing and upon due consideration, all applications for
liquor license for the year 1921, are, for the reasons
above given, refused, and the clerk of the court is di-
rected to mark each and all of said license applications,
both wholesale and retail......'Refused.'" The final
order of the court thus directly refers to the reasons
given for the refusal of the applications, in the opinions
filed by the judges of the court. The opinion filed by the
president judge discloses that he was convinced that the
licenses prayed for by some of the applicants ought to
be granted, although the opinion does not indicate what
particular application, but that in the opinion of Judge
Evans, the additional law judge, there was no necessity
for the granting of any of the liquor licenses prayed for,
which resulted, because of the division of opinion, in the
refusal of all the applications. We do not deem it neces-
sary to discuss the question which might seem to arise
out of the failure of the opinion of the president judge to
indicate the applications with regard to the disposal of
which he differed from the conclusion arrived at by
Judge Evans. It may be that, viewed technically, no
particular appellant is in position to assert that the
judges of the court below were not in full agreement as
to the refusal of his application upon the ground of
necessity. Let it be assumed that all the applications
were refused, upon the grounds disclosed by the opinion
of Judge Evans, the additional law judge, of the court
below.

It must be kept in mind that the extent to which we
may go in considering the opinion of the court is limited
to the ascertainment of the grounds upon which it based
its decision. If the reason set forth is a legal reason, the
order must be affirmed; if, on the contrary, the reason
is not a legal reason the order will be set aside by the
appellate court as being an abuse of discretion and,
therefore, not according to law: Venango County Liq-
uor Licenses, 58 Pa. Superior Ct. 277. We have care-
fully considered the opinion of Judge Evans, which

clearly discloses that he had personally endeavored to ascertain the conditions existing among the license dealers in liquors in the County of Cambria and the existence or absence of any necessity for the granting of any license to sell such liquors as, under the laws of the United States, any person to whom a license might be granted could lawfully sell. The closing paragraph of his opinion thus clearly states the ground upon which he based his judgment that these applications should be refused, viz: "We are, therefore, of the opinion that under the facts as they appear to us there is no necessity for the granting of any liquor license in the County of Cambria." We must, therefore, accept the conclusion that the applications were refused because, in the opinion of the court, the several licenses were not necessary for the accommodation of the public. The duty of determining the question of the necessity for a license is by the law imposed upon the judges of the court of quarter sessions. The mere fact that there is no remonstrance on the records of the court, nothing but the averments in the petition for license, does not relieve the court of the duty to hear and determine. The averments of fact contained in the petition must at the time fixed be heard and considered. The court may hear oral testimony, or may of its own knowledge of the material facts refuse the application: Gross's License, 161 Pa. 346; Shearer's License, 26 Pa. Superior Ct. 34; Empire Brewing Co.'s License, 47 Pa. Superior Ct. 548. "An investigation of this question has no particular bearing upon the petitioner's fitness for a license to sell liquor; it is a general one, with which he has no more legal concern than any other citizens of the ward. The question is one of public concern; the petitioner is no party to it in the sense that persons are parties to private litigation......
The law of the land......has imposed the duty upon the court of ascertaining the instances in which licenses shall be granted. In order to perform this duty properly, the act of assembly has provided means by which

the conscience of the court may be informed as to the facts; it may hear petitions, remonstrances, or witnesses and we have no doubt the court may in some instances act of its own knowledge. The mere appearances of an applicant for license, when he comes to the bar of the court, may be sufficient to satisfy the judge that he is not a fit person to keep a public house. The judge is not bound to grant a license to a man whom he knows to be a drunkard or a thief, or has actual knowledge that his house is not necessary for the public accommodation": Raudenbusch's Petition, 120 Pa. 341. "It may, and sometimes very properly does, act of its own knowledge obtained from observation of the applicant and acquaintance with the district": Kelminski's License, 164 Pa. 231. "The record shows that the case was heard, considered and decided by the learned court below, and that the license was refused on the ground that in the opinion of the court it was not necessary. It is true it was the individual opinion of the judge upon which this action was taken, but we have so many times held that such opinion may be the basis of decision that we regard the subject as settled, and do not deem it necessary to review the cases or to change them": Thomas's License, 169 Pa. 111. The reason given by the learned judge for the refusal of the applications with which we are now dealing was a valid one, a finding of fact, concerning a question upon which the court was by the statute required to pass. The evidence upon which that finding was based is not before us, and it is not our province to determine its weight.

In determining the question of the necessity for these licenses it was entirely proper for the court below to consider the fact that under the act of Congress, commonly called the Volstead Act, it would not be lawful for any person to whom a license issued to sell liquors containing one-half of one per cent or more of alcohol by volume. The Constitution of the United States, article VI, thus provides: "This Constitution, and the laws of

the United States which shall be made in pursuance thereof;......shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." It may here be observed that the Act of the General Assembly of this Commonwealth, approved May 5, 1921, after these applications were refused by the court below, expressly recognizes the paramount authority of the acts of Congress passed pursuant to and in the enforcement of the Eighteenth Amendment of the Constitution of the United States. There was, therefore, no abuse of discretion in the action of the court below in notifying all applicants that they would at the hearing of their applications "be required to appear before the court and submit to an examination upon any matters bearing upon the necessity for the license, fitness of the applicant, including the inquiry as to whether or not there had been any violation of the liquor laws of this State by the applicant, and that in this inquiry was included the question as to whether or not the applicant had violated the provisions of the Volstead Act." When the court so caused all applicants to be notified there were one hundred and seventy-six applications pending for licenses to sell liquors at retail or wholesale, but when the time for hearing arrived only forty-five of those applicants were willing to go into a hearing and submit to an examination by the court as to the manner in which they had conducted their business under the licenses for the preceding year. The other applicants, through their counsel, advised the court that they declined to submit to the examination. Had the court refused the applications without a hearing, to which the applicants were entitled, under the provisions of the statute, such action would have been a manifest abuse of discretion. But when the court afforded the applicants an opportunity for hearing, at the time fixed by standing order or rule of court, that was all that it was required to do, and it might have properly

refused the applications of all those who refused to go into a hearing. The fact that some of these appellants had been licensed during the preceding year did not give them standing to have their licenses renewed from year to year. The statute gives the court jurisdiction to grant license for one year and no more. The grant or refusal of an application for liquor license, after full hearing and consideration of all the matters that the court may consider, does not make the question of necessity res adjudicata upon the hearing of the application of the same person for the same premises in a subsequent year. Such a previous grant or refusal, in some circumstances, ought to have little, if any, weight in determination of the application before the court, although it is proper for the court, in the exercise of a sound judicial discretion, to consider it in connection with all the other relevant facts established at the hearing or known to the court: Reznor Hotel Co.'s License, 34 Pa. Superior Ct. 525. We find no abuse of discretion in the manner in which the court below conducted the hearings, nor in the conclusion at which it arrived.

The order of the court below, in each of these appeals, is affirmed and the appeal dismissed at the cost of the respective appellants.

