## Commonwealth v. Lichter.

*Criminal law—Indictment—Arrest of judgment—Matters of form.*

1. Matters of form in an indictment are not a ground for arresting judgment on a conviction thereunder by a jury, unless such defect of form amounts to a failure to charge an indictable offence.

*Liquor law—Constitutional law—Title of act—Incorporation by reference to Act of Congress—18th Amendment of the Federal Constitution—Act of May 5, 1921.*

2. As soon as the 18th Amendment of the Constitution of the United States became operative, the Brooks Act of May 13, 1887, P. L. 108, became inoperative in so far as it authorized the licensing of the sale of intoxicating liquor, although in so far as it regulated and sanctioned the sale under licenses of alcoholic liquors that are not intoxicating, it continued in operation unaffected by the amendment.

3. Under the 18th Amendment Congress has power to legislate for the regulation of both interstate and intrastate commerce in intoxicating liquors, and is in no wise dependent upon, or affected by, action or inaction on the part of the several states or any of them.

4. The Volstead Act is a part of the supreme law of the land, and as long as it remains in force and unamended, the states cannot license the sale of beverages containing one-half of one per centum of alcohol by volume, although they may license the sale of liquors having a smaller alcoholic content.

5. The purpose of the Woner Act of May 5, 1921, P. L. 407, was to regulate the sale of those beverages over whose sale the State has control, and to co-operate with the Federal Government in enforcing the law as to the sale of those whose alcoholic content is such as to place them beyond the licensing power of the State.

6. The Woner Act does not violate article iii, section 3, of the Constitution of Pennsylvania, because it applies to two classes of alcoholic liquors which are not separately referred to in the title of the act.

7. The Woner Act does not violate article iii, section 6, of the Constitution, by making the distinction between intoxicating and non-intoxicating liquors dependent on the action of Congress in defining such liquors and thus attempting to incorporate an Act of Congress by reference, nor does it violate article ii, section 1, by attempting to delegate legislative power to Congress for future action.

Com. v. Dougherty, 39 Pa. Superior Ct. 338, distinguished.

8. The operation of a statute may be properly made contingent on an extraneous fact, and when such fact is the change in legislation paramount to and controlling the State law as to the subject-matter in question, the action of the legislature is clearly competent.

9. An act of assembly should not be stricken down as unconstitutional unless it clearly, plainly and palpably violates some provision of the fundamental law.

Motion for arrest of judgment and for judgment *n. o. v.* Q. S. Washington Co., Feb. Sess., 1922, No. 76.

*Howard W. Hughes,* District Attorney, and *Warren S. Burchinal,* Assistant District Attorney, for Commonwealth.

*A. Kirk Wrenshall, Isaac W. Baum* and *David M. McCloskey,* for defendant.

BROWNSON, P. J., April 17, 1922.—The defendant was found guilty by a jury of the unlawful sale of whiskey. The indictment was based upon the Brooks Law, Act of May 13, 1887, P. L. 108, as amended by the Act of May 5, 1921, P. L. 407, commonly known as the Woner Act. We have before us a motion in arrest of judgment. The reasons assigned in support of it go in part to the form of the indictment. Matters of form are not a ground for arresting judgment upon an indictment duly found, after conviction by a jury, unless the defect of form amounts to a failure to charge an indictable offence. We are of opinion that this indictment charges with sufficient certainty what amounts to a criminal offence, provided the statute under which it was drawn is a valid piece of legislation. We, therefore, pass at once to

the grounds upon which the validity of that statute is attacked. It is contended that the act is inoperative because uncertain and incomplete in itself, and is unconstitutional and void because violative of several distinct provisions of the Constitution of Pennsylvania.

Before taking up these objections in detail, it will be useful to look at the historical background of the Woner Act and the purposes which the legislature sought to accomplish thereby.

Down until the time when the 18th Amendment of the Federal Constitution became operative, the Brooks Law regulated, by means of a license system, the retailing of vinous, spirituous, malt and brewed liquors, irrespective of their alcoholic content or their capability of producing intoxication in their ordinary use. That amendment prohibits, *inter alia*, the manufacture, sale or transportation of intoxicating liquors for beverage purposes within the United States. The Supreme Court of the United States decided in National Prohibition Cases, 253 U. S. 350, that this amendment operates directly upon and binds all legislative bodies, courts, public officers and individuals within the territorial limits of the United States, and that, by its own force and operation, it has had the effect of invalidating every legislative act, whether by Congress or by the legislature of a state or a territory, which authorizes or sanctions what the 1st section of the amendment prohibits. Accordingly, the instant the 18th Amendment became operative, the Brooks Law, in so far as it authorized the licensing, and the making when licensed, of sales of "intoxicating liquors," became inoperative, though, in so far as it regulated and sanctioned the sale under licenses of alcoholic liquors that are not intoxicating, it continued in operation, unaffected by the amendment: Com. v. Vigliotti, 75 Pa. Superior Ct. 366, 271 Pa. 10; Cambria County Liquor Licenses, 78 Pa. Superior Ct. 28, 38-39.

After the adoption of the amendment, Congress, with the purpose of exercising the power, given to it by section 2, to legislate for the enforcement of national constitutional prohibition, passed the Volstead Act, which prohibited under penalties the manufacture, sale, etc., of any intoxicating liquor (with certain exceptions wherewith we are not concerned in the present case), and declared that the phrase "intoxicating liquor" should be construed as including, *inter alia*, all liquors containing one-half of 1 per centum of alcohol by volume and fit for use for beverage purposes. This enactment, the court declared in National Prohibition Cases, 253 U. S. 350, did not transcend the limits of the power of Congress to legislate for the enforcement of prohibition under the constitutional amendment. The majority of the court merely announced conclusions, without an opinion stating the reasons and grounds thereof, and there seems to have been some divergence of views as to what is the basis and ground of conclusion No. 11, to the effect that the act is valid, in so far as it treats liquors containing the percentage of alcohol mentioned, as within the power of prohibition by an enforcement law. Whether this conclusion is to be regarded as resting upon the view advanced by Chief Justice White in his concurring opinion, on page 391, that as the Constitution does not define the intoxicating beverages which it prohibits, the duty and function of defining them devolves upon Congress; or whether the view of the majority was (as their reference to the case of Ruppert v. Caffey, 251 U. S. 264, may tend to indicate) that as a means of effectually preventing the manufacture, sale, etc., of liquors that unquestionably are intoxicating, Congress has the right and power to class with them, and to prohibit under the same designation, other liquors which, although not in fact intoxicating as this term is commonly understood, yet contain, in a less degree, the same

1 D. & C.

toxic principle that is found in liquors that are so—in either event, it is a fact that the prohibition, in the Volstead Act, of beverages containing as much as one-half of 1 per cent. of alcohol has been determined by the court to be valid. And the court further declared (conclusion No. 9) that the power of Congress to legislate is territorially coextensive with the operation of section 1 of the amendment, embraces intrastate transactions, as well as importation, exportation and interstate traffic, and is in no wise dependent upon, or affected by, action or inaction on the part of the several states or any of them.

The result of all of this is that the Volstead Act, being a valid law passed by Congress in pursuance of the Constitution, is, by virtue of the 2nd section of article VI of the original Constitution, a part of the "supreme law of the land, . . . anything in the constitution or laws of any state to the contrary notwithstanding." The sale of beverages containing one-half of 1 per centum of alcohol by volume is now forbidden by supreme and paramount national law, and, therefore, Pennsylvania, so long as the Volstead Act remains in force and unamended, cannot license the making of any such sales, though she may license the sale of liquors having a smaller alcoholic content: Com. v. Vigliotti, 271 Pa. 10. If, however, the national law should at any time be changed by substituting a different minimum alcoholic content, as, e. g., 1 per centum, the licensing power of Pennsylvania would correspondingly expand.

This was the situation by which the legislature was confronted, and with which it intended to deal, when it passed the Woner Act; and the design of this act was to cause national prohibition and Pennsylvania's license system to fit into each other in such manner as that, together, they should occupy the entire field with respect to alcoholic liquors. The legislature desired to license the sale of such liquors to the extent that it has power to do so; to have the license system occupy the field up to the line where national prohibition begins and presents an obstacle to its further extension; and also, in case that obstacle should at any time by congressional action be moved back, thus placing within the control of the State a portion of the field now occupied by national prohibition, it wished to have the license system move up to the new line and occupy the additional ground thus thrown open to it. And, on the other hand, it was willing to co-operate with the national government for the enforcement of national prohibition.

With these purposes in the mind of the legislature, it amended the Brooks Law, which is an act dealing with the entire subject of the retailing of alcoholic beverages, in such manner as to divide these beverages into two classes, and to deal with these classes separately; the first class consisting of those the sale of which it has power to license, and the second of those which it cannot license because national prohibition blocks the way. As to the former, it retains the license system; as to the latter, it co-operates with the national government by enacting, in pursuance of the power delegated to the states by the 18th Amendment, an enforcement law contained in the new sections added to the Act of 1887. And in order that the law of Pennsylvania may at all times correspond to the national law, and that the State and national systems may always dovetail into each other, and in the event of a change in the latter at a time when the Pennsylvania Legislature shall not be in session, there shall be, even temporarily, no gap or unoccupied field between the two, it is provided, further, that the license system shall expand or contract in its scope in the field occupied by national prohibition [as the latter contracts or expands] by congressional action, and that the portions of the act (the new sections numbered 20, et seq.) which are designed for the purpose of aiding

in the enforcement of national prohibition shall at all times extend in their operation just as far as national prohibition itself extends.

It may be that the Woner Act could have been more felicitously worded, but, as we read it, the above is its true design, intent and meaning.

We are now ready to consider the objections which have been made to the constitutionality of the act.

We think but little time need be spent upon the first objection, viz., that the act contains more than one subject not clearly set forth in the title, and, therefore, violates article III, section 3, of the Constitution.

In our opinion, this act contains but one subject, to wit, alcoholic liquors. Such liquors are a distinct class. True, they are divisible into two sub-classes, those which are and those which are not intoxicating, and this statute deals with both. So did the original Brooks Law. The Woner Act, however, amends the Brooks Law in such a manner as to cause it to deal with these two sub-classes separately and to apply to them different regulations. But this does not cause the statute to offend against the constitutional provision referred to. If it were held to have this effect—if every statute dealing with a class of things, which, upon the basis of a rational and real distinction, divides the same into sub-classes and applies to the latter different regulations, is to be held unconstitutional—a very large proportion of the laws upon our statute books would be wiped out of existence. We think, also, that the title of the Woner Act states very clearly the nature of the amending legislation thereby enacted. In our opinion, this act does not violate section 3 of article III.

The principal assault made upon the validity of the Woner Act is upon the ground that it is not complete legislation in itself, but attempts, in violation of section 6 of article III of the Constitution, to incorporate in it Acts of Congress by reference only, and also offends against section 1 of article II, in that it attempts to delegate legislative power to the Congress of the United States, a body foreign to the Commonwealth of Pennsylvania.

The case of Com. v. Dougherty, 39 Pa. Superior Ct. 338, is relied on as ruling the present case in connection with the point that the provisions of Acts of Congress are "extended or conferred by reference" only, contrary to article III, section 6. Congress, in the exercise of its power to regulate the commerce of the District of Columbia and interstate commerce, had passed a "Food and Drugs Act." The legislature, in an act on the same subject passed to regulate the domestic commerce of Pennsylvania, provided that no action for the penalty thereby imposed for the adulteration of certain articles of food should be sustained "when the article alleged to be adulterated is not adulterated within the meaning of the Food and Drugs Act of June 30, 1906, 34 Stat. at L. 768," enacted by Congress, etc. This was held to be unconstitutional as an "extending" or "conferring" of an Act of Congress by reference to its title only. It is to be observed, however, that the act of assembly undertook to render applicable to a new subject-matter, to wit, the intrastate commerce of Pennsylvania, an Act of Congress which by its own force and operation did not apply thereto at all. This was undertaking to give to the provisions of the Act of Congress an effect and operation, as law, which they did not have as they stood in the Federal statute. It was plainly an extending of those provisions to things not within their scope originally, and which by their own force and operation they did not affect. On the other hand, the reference in the Woner Act to Acts of Congress does not purport nor attempt in any way to give to the provisions thereof any new force and operation as law by extending them to and making them operative upon persons and

1 D. & C.

Commonwealth *v.* Lichter.

things, or either, that would not be governed by them if the act of assembly had not been passed. As we have seen, Acts of Congress passed pursuant to and for the enforcement of the constitutional amendment become, immediately upon their enactment, a part of the law by which the internal commerce of Pennsylvania, so far as relating to intoxicating liquors, is regulated, and for the purpose of regulating such commerce they have precisely the same operation, in every respect, by their own force and effect, that they would have if the Woner Act had never been enacted. It refers to them, not for the purpose of giving to them any new force, operation or application, but for the purpose of recognizing, as was said in Cambria County Liquor Licenses, 78 Pa. Superior Ct. 28, 39, "the paramount authority of the Acts of Congress passed pursuant to, and in the enforcement of, the 18th Amendment of the Constitution of the United States;" not for the purpose of undertaking to do what the Superior Court says in Com. *v.* Sweeney, 61 Pa. Superior Ct. 367, the act that was in question in Com. *v.* Dougherty undertook to do, viz., "to read into itself, by reference to its title, an entire Act of the Federal Congress," but merely for the purpose of recognizing, as controlling, the congressional definition of the phrase "intoxicating liquors" for the purposes of national prohibition.

This brings us to the position taken by counsel that the Woner Act is not a complete expression of legislative will, but leaves it to Congress to say what shall be the law of Pennsylvania. The legislative will and intention seem to us to be completely manifested by the statute, to the effect stated in an earlier part of this opinion, viz., that the sale of all alcoholic liquors which are outside of the scope of national prohibition, and which, therefore, the State may license, shall be regulated by the prescribed license system, but that as to liquors which are or shall be the subject of national prohibition, the legal machinery of the State shall be used to co-operate in enforcing that prohibition. The legislative will was completely expressed when the act left the legislative halls, but its operation was to depend upon a contingency, to wit, the action of Congress in settling from time to time the scope of national prohibition.

There is abundant authority to the effect that the operation of a statute may be made contingent upon an extraneous fact, and that such extraneous fact may be the action of a foreign legislative body. A good illustration of this, accompanied by a very valuable and instructice opinion, is found in the case of People *v.* Fire Association of Philadelphia, 92 N. Y. 311. It was there held that a law of New York providing that an insurance company of another state seeking to do business in New York should pay for taxes, etc., an amount equal to what its home state, by "existing or future laws," should impose upon New York companies seeking to do business therein, was not invalid as a delegation to the legislature of another state of the power to say what the law of New York should be. To the same effect is Phœnix Ins. Co. *v.* Welch, 29 Kan. 672. In 12 Corpus Juris, § 325, page 842, it is said that "by the weight of authority, and the better reason, such statutes have been sustained on the ground that they do not delegate power to the foreign legislature to fix the amount of the charges, but merely impose taxes, etc., the amount of which is made contingent on an extraneous fact." We have long had in our own statutes instances of laws, the operation of which was made dependent upon present and future action by legislatures of other states, *e. g.*, the act which regulated the transfer of trust funds to other jurisdictions: Act of April 21, 1856, P. L. 495, amended May 13, 1889, P. L. 190. The provision in the Federal Bankrupt Act directing the allowance of such exemp-

tions, dower, priority of payments, etc., as the laws of the particular state shall provide for does not constitute a delegation of congressional power nor render the act void: Hanover National Bank v. Moyses, 186 U. S. 181. Other instances of congressional legislation are mentioned in the New York case above cited. The principles by which the scope of this doctrine is limited and defined were well stated in the case of State v. Parker, 26 Vt. 357, quoted with approval in People v. Fire Association of Philadelphia, 92 N. Y. 311, as follows: "If the operation of a law may fairly be made to depend upon a future contingency, then it makes no essential difference what is the nature of the contingency, so it be an equal and fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object of the statute as not to be a mere idle and arbitrary one;" to which was added: "One may find any number of cases in the legislation of Congress where statutes have been made dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts or restrictions of other countries."

In the case at bar the contingency upon which the operation of the amended Brooks Law depends is certainly one "so far connected with the object of the statute as not to be a mere idle and arbitrary one." That contingency is an enactment of Congress determining and declaring what shall be deemed to be intoxicating liquors for the purposes of national prohibition, and such an enactment, when made, operates as a limitation upon the power and right of the Legislature of Pennsylvania to deal with the traffic in alcoholic beverages in its own way. When, therefore, the legislature provides, as it has done in this statute, that the line of division between the beverages which shall be licensed and those the sale of which shall be punished for the purpose of aiding in the enforcement of national prohibition shall always be drawn just as far toward one side as the enactments of Congress permit the State statutes to go, this is no reference to a "mere idle and arbitrary" contingency. The plainly intended meaning of the amended Brooks Law, and its effect as a whole, are as follows: (a) The manufacture, sale, etc., of intoxicating liquors which, by reason of national prohibition, Pennsylvania has or shall have no power to license shall, for the purpose of aiding in the enforcement of such prohibition, be punishable as a misdemeanor by the State courts; but (b) the sale of alcoholic liquors which shall not have been brought by Congress within the scope of national prohibition, and which, therefore, Pennsylvania may license, shall be regulated by licenses, and shall be punishable only if made without license, or (when by a licensee) if made under certain specified circumstances. The contingency, then, is in the present instance one vitally connected with the design and purpose of the statute; it is one upon which depends fundamentally the right of the legislature to make law of that which it desired to be the law.

For the legislature to provide in a statute that its operation with respect to what it commands or prohibits shall change, in the event of a change in some paramount regulation whereby the legislature's power is controlled and limited, is not a new thing. It has been done heretofore in Pennsylvania. An instance of this is found in the Ballot Law of June 10, 1893, P. L. 419, whereby the legislature, wishing to make ballots absolutely secret, but being at the time prevented from so doing by the constitutional requirement that they be numbered for identification, directed election officers to number ballots, cover up the numbers, and then deposit in the ballot-box, so long as this constitutional provision should stand, but provided further that if the people should ever remove it from the Constitution, then voters should themselves deposit their ballots in the box without any numbering (section 15). It never

was supposed or dreamed that this was invalid as a delegation of legislative power to the people, i. e., a reference to them of what should be the details of statute law. It was merely providing that the operation of the statute should depend upon the existence or non-existence, at any particular time in the future, of a certain state of facts. So, it seems to us, it was competent for the legislature to provide that at any given time in the future alcoholic beverages which shall then answer a certain description, viz., that they are outlawed by paramount national authority, shall be dealt with in one way, and beverages then answering a different description, viz., that they are not so banned by paramount national prohibition, shall be dealt with in a different manner.

The whole difficulty in the minds of those who argue that such prospective legislation is invalid arises, says Finch, J., in People v. Fire Association of Philadelphia, 92 N. Y. 311, 319, "from a failure to regard the foreign law, relatively to our own legislation, as simply and purely an extrinsic and contingent fact. Such fact, like any other, may justly influence and even occasion legislative action, without at all changing its nature, destroying its discretion or abridging its duties or its judgment. Most laws are made to meet future facts. They are complete when passed, but sleep until the contingency contemplated sets them in operation. . . . Such contingency may sometimes be, instead of a certain and definite fact, one which is variable and changeable. The legislation suited to such a fact and adapted to such a future emergency may properly recognize its movable character and be itself made flexible to the changing emergency, and this very characteristic is the product of legislative will and discretion rather than a surrender of it." See, also, the remarks on page 322. In the quotation just made the reference is to the action of the legislature of another state. With how much more force does what is said apply to the future action of a paramount authority which will be binding on the legislature and determinative of the limits of its power to legislate, and the validity of its then existing legislation.

It is argued that the amended Brooks Law is incomplete, and therefore invalid, because a person will have to look outside of the statute itself in order to ascertain what it is that section 20 prohibits under penalty. Of course he will. And so would he have to do if the act merely prohibited the sale of intoxicating liquors without any definition; he would then have to investigate as to whether a certain particular liquor which he proposes to sell is intoxicating in fact. This argument, if sound, would strike down the entire doctrine that the operation of legislation may be made to depend upon a future contingent and extrinsic fact; a doctrine which is well recognized. Moreover, what in this instance the individual has to look into, outside of the statute, is merely national legislation acting upon and binding himself personally, and which he is at any rate bound to know, independent of anything contained in the amended Brooks Law.

There has been cited to us, and the defendant very strongly relies upon, an opinion given on Nov. 21, 1921, by the Justices of the Supreme Court of Massachusetts to the senate of that state, to the effect that portions of a certain enforcement bill then pending in the Massachusetts Legislature would, if enacted, be unconstitutional. With the conclusions reached in that opinion we are generally in accord. The defendant relies specially upon a conclusion that section 1 (b) of the bill, providing that the word "liquor" and the phrase "intoxicating liquor," as therein employed, "shall have the meaning defined from time to time by the Congress of the United States for the purpose of enforcing the provisions of the 18th Amendment," etc., would be

unconstitutional. With regard to this conclusion we have three remarks to make: First, we have not been furnished by counsel with a complete copy of the Massachusetts bill, so that we might be able to see with certainty whether there is anything in some other part of it, or in its scope and structure as a whole, that would throw light upon the view taken by the judges of section 1 *(b)*. Secondly, this conclusion of the judges seems, from their opinion, to be based in part upon the view that the Massachusetts Legislature would by that bill be attempting to treat the Congress of the United States "as a subsidiary board or commission," whereas the Brooks Law, as amended by the Woner Act, is, as our Superior Court says (78 Pa. Superior Ct. 28, 39), treating Congress, not as a subsidiary board or commission, but as what it really is with respect to the subject-matter, viz., a body with authority to take action which will be paramount to Pennsylvania legislation. And, thirdly, there is a decided and a clear difference between saying, as the Massachusetts bill did, that the word "liquor" (without any qualifying adjective) shall have, as used therein, whatever meaning Congress shall give to that word at any time in the future, and saying, as the Woner Act does, that the phrase "intoxicating liquors" shall mean "anything found and determined from time to time to be intoxicating by Act of Congress passed pursuant to, and in the enforcement of, the Constitution of the United States of America" (the effect of which will be to bring the thing so "found and determined" within the scope of national prohibition). Congress has, by the Volstead Act, given to the word "liquor" (standing alone) a certain meaning, the same as that of the phrase "intoxicating liquor," but by some future act it may give to it an entirely different meaning. Thus, the Massachusetts bill was referring to the will of Congress what a word contained in the bill shall mean, whereas the 1st section of the Brooks Law, as amended by the Woner Act, expresses the will of the legislature itself as to what its words shall mean. Therefore, even if the opinions of the Massachusetts judges were binding precedents for this court, this opinion would not rule the present case.

An act of assembly should not be stricken down as unconstitutional unless it clearly, plainly and palpably violates some provision of the fundamental law. To be in doubt about its constitutionality is to be resolved in favor of its validity: Com. *v.* Mathues, 210 Pa. 372, 391, and cases cited. If it be at all possible to give it a construction which would make its operation constitutional, this should be done *ut res magis valeat quam pereat*. And for this purpose regard should be had to its true intent and meaning rather than to the mere form of words in which the legislature has attempted to express this meaning. "The substance of the legislative action should be regarded, rather than the form:" Cooley, Const. Lim. (7th ed.), 137. An illustration of this principle is found in City of Wilkes-Barre *v.* Meyers, 113 Pa. 395, 400, where an act excepted cities of the first class, which exception, if literally interpreted, would render it unconstitutional, but the court, finding that the real intent of the act was to except Philadelphia only (which, with respect to the particular subject-matter, the Constitution permitted), disregarded form and held the act constitutional.

After a careful consideration of the questions which have been raised in this case, we feel that, looking at the substance of the legislation according to its true intent and meaning rather than at mere form, we cannot say that the amended Brooks Law so clearly and plainly violates the Constitution of Pennsylvania that it ought to be stricken down as invalid.

And now April 17, 1922, after argument and due consideration, it is ordered that the defendant's motion in arrest of judgment, and also his
1 D. & C.

motion for the entry of judgment in his favor *non obstante veredicto*, be overruled, and that the defendant appear in court for sentence on Monday, April 24, 1922, at 10 o'clock A. M.

From Harry D. Hamilton, Washington, Pa.