Commonwealth *v.* Stofchek, Appellant.

514

Argued April 6, 1936.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. Robert Thompson,* with him *Ambrose Bradley,* of
*Thompson & Bradley,* for appellant.

*Thomas I. Guerin,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Frank Throckmorton,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 26, 1936:

Joe Stofchek was indicted for possession of liquor in violation of section 602 (b) of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15 (Special Session). The indictment was quashed on two grounds, first, that the section involved is not clearly indicated in the title of the act, and, second, that it infringed guarantees contained in our Constitution. The Superior Court reversed and we allowed an appeal to this court.

Are the penal provisions of this section of the Pennsylvania Liquor Control Act[1] sufficiently expressed in the title to comply with article III, section 3, of the Constitution? The latter is worded: "No bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title."

---

[1] Section 602 (b) of the act provides: "It shall be unlawful for any person, except a manufacturer, or the board, or the holder of a sacramental wine permit or of an importer's. license, to keep any liquor within this Commonwealth which was not lawfully acquired prior to January first, one thousand nine hundred and thirty-four, or has not been purchased from a Pennsylvania Liquor Store."

The title of the act is as follows: "To regulate and restrain the sale, importation, and use of certain alcoholic beverages, conferring powers and imposing duties upon the Pennsylvania Liquor Control Board, the Department of Public Instruction, other officers of the State government, courts, and district attorneys; authorizing the establishment and operation of State stores for the sale of such beverages not for consumption on the premises, and the granting of licenses, subject to local option, to sell such beverages for consumption on the premises; forbidding importation or bringing of such beverages into the State except as herein provided; prohibiting certain sales or practices in, connections with, and transactions in such beverages by licensees and others; making disposition of the receipts from State stores and of license fees; and imposing penalties."

The Commonwealth contends that section 602 (b) is embraced in that part of the title reading: "An act to regulate and restrain the sale, importation, and *use* of certain alcoholic beverages." Does the word "use" mean "possession"? It is urged it does not, and that the inference therefrom is not sufficient to graft thereon the penal provision. We have stated that a purpose is not clearly expressed in the title of an act if it can be ascertained only by a process of reasoning *(Phillips's Estate,* 295 Pa. 349; *Provident Life & Trust Co. v. Hammond,* 230 Pa. 407; *Investor's Realty Co. v. Harrisburg,* 281 Pa. 200; *Guppy v. Moltrup,* 281 Pa. 343; see also, *Commonwealth v. Barbono,* 56 Pa. Superior Ct. 637). But the rule in the abstract is too general and a reference to these decisions shows a clear line of distinction from the case now before us.

Appellant places his principal reliance on *Commonwealth v. Barbono, supra.* That case arose under the Act of June 15, 1911, P. L. 975, entitled "An act providing for the registration of bottles . . . or other containers; and forbidding the refilling of, or dealing or trafficking in, such registered bottles. . . ." The defendant there urged that the provision making "unlawful possession" of such bottles a penal offense was not indicated by the title. The objection was sustained. The title of that act discloses two definite purposes; first, the registration of containers, and, second, the regulation of the refilling or dealing or trafficking in such containers. No provision for general use is indicated by the title. The words "dealing or trafficking in" are distinctly restricted to a commercial use. The title of the Liquor Control Act is more comprehensive. The word "use" employed in it includes "possession." It would be difficult to use liquor without having it in possession. Possession is clearly a step in use, and "use" is not necessarily confined in meaning to active service.

A second phrase from the title, ". . . prohibiting certain sales or *practices in, connections with,* and *trans-*

*actions in* such beverages by licensees and others," is also sufficient to give notice that possession is dealt with. But, it is urged, these words apply only to licensees, the one group of persons specifically mentioned. Appellant thus invokes the familiar maxim that to expressly name one class is to exclude all others. The principle was fully discussed in *Sugar Notch Borough,* 192 Pa. 349, and has been frequently applied under this section of the Constitution. But, as the title here refers to "licensees *and others,"* this rule has no application; the addition of "and others" is indicative of a clear intention to include all persons generally.

The real purpose of section 3, of article III, must be considered in answering the question raised by appellant. The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in *Soldiers and Saliors Memorial Bridge,* 308 Pa. 487, citing *Carr v. Ætna A. & L. Co.,* 64 Pa. Superior Ct. 343, at 349, the provision is not applicable "unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill." It is intended to operate to exclude from the measure that which is secret and unrelated: *Beckert v. City of Allegheny,* 85 Pa. 191. The history of this section indicates that this is its true purpose.[2]

---

[2] This provision of the Constitution of 1874 was adopted without debate. It is derived from the Second Amendment of 1864, and was patterned after similar sections in the constitutions of other states. Buckalew, who took an active part in the constitutional convention, says in his book on the Constitution, at page 68: "The objects had in view in the adoption of this section and in the adoption of the Amendment of 1864 which it reënacts, were to

The title of the act before us indicates two cognate legislative objects; first, to regulate and restrain the sale, importation and use of certain alcoholic beverages and to impose penalties for practices or transactions prohibited by the regulations; second, to create as a means of carrying out and enforcing the regulatory provisions, the Pennsylvania Liquor Control Board and the State Store system. The title of the act comprehends a complete system for liquor control within the Commonwealth. It need not be an index of the provisions, nor a synopsis of the contents: *Commonwealth v. Liveright*, 308 Pa. 35; *Carr v. Ætna A. & L. Co., supra.* It is sufficient if it give notice of their tenor to interested persons of a reasonably inquiring state of mind: *Reeves v. Phila. Suburban Water Co.*, 287 Pa. 376; *Specktor v. Hanover Fire Insurance Co.*, 295 Pa. 390; *Commonwealth v. Macelwee*, 294 Pa. 569; *Boock's Petition*, 303 Pa. 363. So long as the title indicates a general subject to which the provision involved is germane or incidental, the provision itself is sufficiently contained: *Sloan v. Longcope*, 288 Pa. 196; *Commonwealth v. Miller*, 313 Pa. 140; *Boock's Petition, supra; Commonwealth v. Herr*, 229 Pa. 132. If these established principles are applied to this case it is obvious that the title of the act indicates the intention of the legislature to provide, as

prevent 'log-rolling' and fraud, trickery, or surprise in legislation. Every measure is to stand upon its own merits without borrowing strength from another, and the members of each House, and still more the public, are to have notice by its very title of the contents or nature of a bill. The construction of the section, therefore, must be such as will promote the attainment of these objects, and the words must not be weakened by nice refinements or distinctions, or wrested from their plain and natural import."

The first case decided construing this section was *Blood v. Mercelliott*, 53 Pa. 391. Judge REED interpreted it by reference to the decisions of the courts of New Jersey, Iowa, Indiana, Kentucky, Maryland and New York, and found that its primary object was to prevent the passage of omnibus bills, a practice which was as prevalent in other states as in this Commonwealth.

in section 602 (b), for punishment of the unlawful possession of liquor.

Has the legislature then power, under article I, section 1, of the Constitution, to make punishable the possession of liquor not acquired prior to January 1, 1934, nor purchased from a State Liquor Store? That constitutional section provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

But, the State possesses inherently a broad police power which transcends all other powers of government. There is therefore no unqualified right to acquire, possess, and enjoy property if the exercise of the right is inimical to the fundamental precepts underlying the police power. This court said in *Commonwealth v. Widovich*, 295 Pa. 311: "The police power is the greatest and most powerful attribute of government; upon it the very existence of the State depends. . . . If the exercise of the police power should be in irreconcilable opposition to a constitutional provision or right, the police power would prevail." It needs no constitutional reservation or declaration to support it: *City of Scranton v. Public Service Commission*, 268 Pa. 172. And see *Powell v. Commonwealth*, 114 Pa. 265, in which the Act of May 21, 1885, P. L. 22, making manufacture, sale, and possession with an intent to sell of oleomargerine unlawful, was upheld as a valid exercise of the power. One of its well known objects is the protection of public health, and laws prohibiting the import, export, sale or transfer of articles deleterious to the public, such as intoxicating liquors are valid under it: *Bartemeyer v. Iowa*, 18 Wall. 129; *Mugler v. Kansas*, 123 U. S. 623; *Silz v. Hesterberg*, 211 U. S. 31; *Commonwealth v. Gardner*, 297 Pa. 498. What the State can prohibit entirely, it can regulate. See *Eberle v. Michigan*, 232 U. S. 700; *Common-

wealth v. *Vigliotti,* 271 Pa. 10, affirmed *Vigliotti v. Commonwealth,* 258 U. S. 403; *In re Hoover,* 30 Fed. 51.

This State has adopted many acts aimed at the beneficial supervision of the traffic in intoxicating liquors. The Brooks High License Law of May, 1887, P. L. 108, restricted the trade in such liquors to licensed persons, and established certain rules for its conduct. Among the objections made to the Brooks Law was that regulation was thereby taken out of the defined scope of the police power, in that the State by creating agencies for the sale of intoxicating liquors promoted rather than repressed a public evil. We dismissed this contention in *Commonwealth v. Vigliotti, supra.* See also *Raudenbusch's Appeal,* 120 Pa. 328; *Boyle's License,* 8 Pa. Superior Ct. 521; *Gregg's License,* 36 Pa. Superior Ct. 633. Appellant urges the same objection to this act, but the establishment of the Liquor Control Board and the State Stores merely supplants the licensing power and distribution medium of the Brooks Law. See *Commonwealth v. West Phila. Fid. Mannerchor,* 115 Pa. Superior Ct. 241, 245. The fact that the system carries regulation by State Liquor Stores to a higher degree than the licensing system, by placing the sale of liquor directly in the hands of the State, does not militate against the constitutionality of the act. It is rather in aid thereof, as the State can thus exercise a greater measure of control than was possible under the former system. Within the scope of the police power, a state may establish dispensaries for the exclusive sale of intoxicating liquors. See *Vance v. W. A. Vandercook Co. (No. 1),* 170 U. S. 438; *Plumb v. Christie,* 103 Ga. 686; *State v. Chastian,* 49 S. C. 171; *Ajax v. Gregory,* 177 Wash. 465. A system similar to ours also prevails in Ohio (Ohio Gen. Code, sections 6064-1).

The Liquor Control Act is stated by the legislature to be ". . . an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Common-

wealth, and to prohibit forever the open saloon; . . ."
While that body may so express its object, the courts
will examine the act[3] to determine whether there is a
real relation of the subject-matter to that purpose. As
thus examined its provisions are in entire accord with
the police power of the State as it has been defined by
our decisions. The act provides an effective barrier to
many evils affecting the public welfare. It cannot now
be seriously argued that the State may not determine
what liquors shall be sold to the public, and prevent the
sale of those which it determines are illicit concoctions
definitely injurious to health: *Purity Extract Co. v.
Lynch,* 226 U. S. 192. See also the Act of June 2, 1881,
P. L. 43. It may prohibit sales on legal holidays and
on election days: *Commonwealth v. Sellers,* 130 Pa. 32,
or to minors *(In re Carlson's License,* 127 Pa. 330), and
to persons of known intemperate habits: *Commonwealth
v. Zelt,* 138 Pa. 615. The legislature proposes to accom-
plish all of these things by the State Liquor Store sys-
tem. The regulations mentioned are themselves clearly
within the police power. The legislature alone is the
judge of the necessity or expediency of the means
adopted to effect a legitimate object: *Silz v. Hesterberg,
supra; Cambria County Liquor Licenses,* 78 Pa. Supe-
rior Ct. 28; *Penna. R. R. Co., v. Ewing,* 241 Pa. 581.

But appellant contends that the State has no power
to make the mere possession of liquor punishable be-

---

[3] It provides sale regulations for the State Stores (section 304 of
article III), prohibiting sales upon legal holidays and election days.
It provides (section 302, article III) for the selection of a capable
and intelligent personnel for the exclusive distribution of liquor,
not only at retail to the public, but also at wholesale to hotels, res-
taurants, clubs, railroads, pullman and steamship companies (sec-
tion 305 of the same article). It provides (in article IV) for the
licensing by the Liquor Control Board of hotels, restaurants and
clubs for the retail sale of liquor for consumption on the premises,
and gives the board supervision over the licensees. It provides for
control by the board over the character of liquors to be sold and
dispensed by the State Stores (section 203 of article II).

cause such use is harmful to no one, and because the real purpose of the act is to create a state monopoly in the sale of liquor. We have never decided the question whether the bare possession of liquor can be made punishable, although the Snyder Act of March 27, 1923, P. L. 34, so provided. Statutes in other jurisdictions were enacted with this object prior to the Eighteenth Amendment. As to the validity of these acts there was a difference of opinion in the courts of those other states having constitutional guarantees similar to those of Pennsylvania. The tendency of the earlier decisions, which has persisted in several jurisdictions, was to regard such enactments as violative of the inherent right of citizens to be protected in their possession of private property. It was held that the mere possession of liquor, without more, was in no way injurious to the public at large, and could not, therefore, afford justification for the exercise of the police power. To this effect: *Re Luera,* 28 Calif. App. 185; *Ex parte Francis,* 76 Fla. 304; *Commonwealth v. Campbell,* 133 Ky. 50; *Ex parte Wilson,* 6 Okla. Cr. 451; *State v. Gilman,* 33 W. Va. 146; *Town of Cortland v. Larson,* 273 Ill. 602. This is the principle contended for by the appellant.

A contrary view prevails in the majority of jurisdictions, including the federal courts. It was pointed out in *United States v. Murphy,* 264 Fed. 842, citing *Purity Extract Co. v. Lynch, supra,* that a transaction which is innocuous, if considered separately, may nevertheless be included in the scope of a general prohibitory measure designed to accomplish a purpose well within an admitted governmental power. The evil here does not lie in the mere possession of liquor but in the potentialities for improper use which inhere to such possession. See *Massey v. United States,* 281 Fed. 293. And, in *Crane v. Campbell,* 245 U. S. 304, the Supreme Court upheld the constitutionality of the Idaho Statute of 1915 prohibiting the possession of intoxicating liquor except such as was obtained under a state permit.

These decisions are based upon the premise that possession is the first essential towards barter and sale, and is in aid of illicit traffic: *Rose v. United States,* 274 Fed. 245; *Page v. United States,* 278 Fed. 41. While they would not be controlling, they aid in our determination. Following the rule of the majority of states for the reasons given, we hold that the legislature has the power to prohibit the mere possession of intoxicating liquor as a means of assisting the enforcement of its regulatory measures.[4]

A sufficient answer to the objection raised here and in the following question is found in the regulation of the act prohibiting sales of liquor to minors, which is of great importance in such traffic. If they may possess liquors purchased outside of Pennsylvania, acquired from others who have or have not so purchased, or made at home, then the very evil this statute intended to prevent, and the abolition of which is absolutely necessary to our social life, is permitted to flourish.

The next question is, may the State, even though it can prohibit possession of all liquor, limit the prohibition to liquor not purchased from the State Stores or obtained prior to their creation, or is this distinction invalid as arbitrary discrimination?

The same protest of discrimination was heard against the earlier licensing system. See *Eberle v. Michigan, supra; State v. Chastian, supra.* The preferment of the State Stores is essential to the efficient control of the liquor traffic in Pennsylvania. If the legislature did not strike at unauthorized distributors, and those who patronize them, the entire purpose of the act would be de-

---

[4] For other cases adopting this view see *Powell v. State,* 18 Ala. App. 101; *People v. Sandy,* 70 Colo. 558; *Barbour v. State,* 146 Ga. 667; *State v. Ligaarden,* 59 N. D. 475; *Fitch v. State,* 102 Neb. 361; *Ex parte Zwissig,* 42 Nev. 360; *Seattle v. Brookins,* 98 Wash. 290; *State v. Fahey,* 32 Del. 504; *State v. Johnson,* 61 Utah 256; *State v. Brackins,* 152 La. 445; *Krusoczky v. State,* 108 Ohio St. 430; *State v. Bradley,* 109 S. C. 411; *State v. Brown,* 40 S. D. 372.

524

feated. It cannot be successfully urged that section 602 (b) is not in furtherance of that general purpose.

The State has the power to enact such laws since the repeal of the Eighteenth Amendment of the federal Constitution. The Twenty-first Amendment expressly reserves to the states the power to regulate the use or importation of liquors within their jurisdictions. It is an incident of the powers originally belonging to the states and reserved to them by the Tenth Amendment to the federal Constitution: *United States v. Lanza*, 260 U. S. 377; *Commonwealth v. Gardner, supra.*

Order affirmed.