## Seagrave Social Club's License

*Herbert B. Cohen,* for appellant.

*Horace Segelbaum,* Special Deputy Attorney General, contra.

SHERWOOD, P. J., December 29, 1939.—This matter comes before the court on appeal from the refusal of the Pennsylvania Liquor Control Board to issue to appellant a club license for the sale of malt or brewed beverages.

At the argument, counsel stipulated that the number of licenses now in effect in Wrightsville, York County, Pa., exceeds the quota allowed under the Act of June 24, 1939, P. L. 806; but it is contended that the act violates article III, sec. 3, of the Pennsylvania Constitution, in that: (1) The subject or subjects contained therein are not clearly expressed in its title; (2) it necessitates the application of a ridiculous and ludicrous formula not contemplated by the legislature. Appellant abandoned other objections set forth in the appeal.

Appellant's first contention is based upon the phraseology of the title of the act and the allegation that the

alcoholic beverage laws do not designate either liquor or beer licenses as retail licenses or licenses for the retail sale of liquor or malt and brewed beverages. The title of the act is as follows:

"An act limiting the number of licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages, to be issued by the Pennsylvania Liquor Control Board; defining hotels, and prescribing the accommodations required of hotels in certain municipalities."

The general principles governing the construction of article III, sec. 3, of the Pennsylvania Constitution, have been so frequently reiterated by the courts of the Commonwealth that a brief reference to them will suffice. It is well settled that this provision does not require that the title of a statute must be an index to its contents; nor a synopsis thereof: Commonwealth ex rel. v. Liveright, etc., et al., 308 Pa. 35; Commonwealth ex rel. v. Irvin, 110 Pa. Superior Ct. 387: Soldiers & Sailors Memorial Bridge, 308 Pa. 487. The title of an act need only name the real subject of legislation and designate that subject with sufficient clearness so that one of "reasonably inquiring state of mind" would be put on inquiry as to the body of the act: Constitutional Defense League v. Waters, 309 Pa. 545. In determining whether the title of an act is sufficient, the Constitution presupposes such a state of mind as would cause the reader to follow the trail indicated by the main part of the title into the body of the act: Boocks' Petition, 303 Pa. 363; Fedorowicz v. Brobst, 254 Pa. 338; Graeff v. Schlottman et al., 287 Pa. 342; Baker et al. v. Kirschnek et al., 317 Pa. 225.

In Commonwealth v. Stofchek, 322 Pa. 513, the court said:

"The real purpose of section 3, of article III, must be considered in answering the question raised by appellant. The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional di-

lemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in Soldiers and Sailors Memorial Bridge, . . . the provision is not applicable 'unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill'. It is intended to operate to exclude from the measure that which is secret and unrelated. . . . The history of this section indicates that this is its true purpose."

The act in question contains but one subject, which is clearly expressed in its title, to wit, the limitation of the number of licenses for the retail sale of liquor or malt and brewed beverages. The other provisions of the act are germane to its subject.

But it is contended by counsel for appellant that under the provisions of the Beverage License Law of June 16, 1937, P. L. 1827, 47 PS §84, a club license is not a retail dispenser license. That this contention is not tenable clearly appears by reference to the following provisions of the Beverage License Law. Section 6(a) provides, inter alia:

". . . the board shall, in the case of a hotel or eating place, grant and issue, and, in the case of a club, may, in its absolute discretion, grant and issue, to the applicant a retail dispenser's license." Section 19(d), in fixing the fees for retail dispensers, provides:

"In the case of a retail dispenser, except clubs, the license fee shall be graduated according to the population," etc. Section 22(a) provides:

"No retail dispenser shall sell any malt or brewed beverages for consumption on the licensed premises except in a room or rooms or place on the licensed premises at all times accessible to the use and accommodation of the general public; but this section shall not be interpreted to prohibit a retail dispenser from selling malt or

brewed beverages in a hotel or club house . . . occupied by a bona fide registered guest or member entitled to purchase the same."

It is, therefore, evident that throughout the act the legislature considered a club licensee a retail dispenser. The word "retailer" and the words "retail dispenser" are used interchangeably in the said act.

The words "licenses for the retail sale of liquor, malt or brewed beverages, or malt and brewed beverages" include hotel, restaurant, eating place, and club licenses, and any other licenses issued by the Pennsylvania Liquor Control Board under which licenses alcoholic beverages may be sold by the glass, etc., for consumption only on the premises where sold with a sole exception of a quantity of malt or brewed beverages, to wit, 72 fluid ounces, that may be sold under such licenses for off-premise consumption. In other words it seems to us that all licenses that permit the sale of alcoholic beverages by the glass, etc., for consumption only on the premises where sold (except as above stated), are licenses for the "retail sale" as distinguished from licenses for the "wholesale sale", under which licenses consumption on the licensed premises is prohibited.

The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501, provides, in section 33: "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage". Webster's dictionary defines "retail" as the "sale of commodities in small quantities or parcels; — opposed to *wholesale*. . . . Of, pert. to, engaged in, or connected with, retailing commodities; as, *retail* trade, grocer, or price. . . . To sell in small quantities, as by the single yard, pound, gallon . . . to sell directly to the consumer; as, to *retail* cloth or groceries."

The Pennsylvania Liquor Control Act authorizes the holders of restaurant, hotel, and club liquor licenses to sell liquor by the glass, etc., and also malt or brewed beverages for consumption on the licensed premises, and, in

certain cases, malt or brewed beverages in small quantities for consumption off the licensed premises. This type of sale is a "retail sale" within the dictionary definition and according to the common and approved usage of the phrase. This is also confirmed by what the Supreme Court said in Commonwealth v. Stofcheck, supra, in footnote 3: "It provides (in article IV) for the licensing by the Liquor Control Board of hotels, restaurants and clubs for the retail sale of liquor for consumption on the premises, and gives the board supervision over the licensees."

The title of the Act of 1939 names the real subject of legislation and designates that subject with sufficient clearness so that a person of reasonably inquiring state of mind is put on inquiry as to the body of the act. It, therefore, meets the constitutional requirement.

Appellant's second contention is that the act is unconstitutional in that "it necessitates the application of a ridiculous and ludicrous formula not contemplated by the legislature." This contention is based upon the allegation that under section 2 of the Act of 1939, supra, any number of new club licenses may be issued by the board in a municipality, if and when one license may still be issued therein, for the reason that in calculating the number of retail licenses in a municipality, licenses granted to clubs are excluded.

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions. Therefore, in construing the law in question, it is necessary to refer to the rules of construction of statutes. Statutes which are not inconsistent with one another and which relate to the same subject matter are in pari materia, and should be construed together and effect given to them, although they contained no reference to one another and were passed at different times. Another rule of construction which is applicable is set forth in section 52 of the Statutory Construction Act, and reads as follows:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain;

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwalth . . .

"(5) That the Legislature intends to favor the public interest as against any private interest."

Appellant's contention is not tenable, due to the fact that under section 6(a) of the Beverage License Law, supra, the board is given absolute discretion in the issuance of new licenses to clubs. However, while the language of the act indicates that it may be possible to issue a number of club licenses, as hereinbefore stated, it is not probable. Furthermore, the act applies in the same manner to all club licenses, and so long as all licenses in a class are treated the same, there is no discrimination. Accordingly, this provision of the act must be considered reasonable and within the legislative authority under the police power. Once it is determined that the subject of legislation is within the police power of the State, the legislature alone is the judge of the necessity or expediency of the means adopted to effect a legitimate object. The purpose of the act in question is to remedy an existing evil and to further control the sale of alcoholic beverages by placing a limitation upon the number of establishments at which such beverages may be sold. The efficacy of the plan by which the legislature is thus attempting to correct an evil and to further regulate the liquor traffic does not affect the power of the legislature to enact this type of legislation.

Applying the aforesaid rules to the Act of June 24, 1939, P. L. 806, and keeping in mind the fact that under the Beverage License Law the board has discretion in

the issuance of new club licenses, the conclusion is inevitable that the exclusion of club licenses in calculating the number of licenses for the retail sale of alcoholic beverages in a municipality, and the prohibition of the issuance by the board of new club licenses when the number of retail licenses exceeds the number allowed under the said act, is a reasonable and proper exercise of the police power. It follows that the action of the Liquor Control Board must be sustained and the appeal of the Seagrave Social Club, of Wrightsville, York County, Pa., dismissed.

And now, to wit, December 29, 1939, it is ordered, adjudged, and decreed that the appeal of the Seagrave Social Club, of Wrightsville, York County, Pa., from the refusal of the Pennsylvania Liquor Control Board to issue to appellant a club license for the sale of malt or brewed beverages is dismissed; and an exception is granted to appellant, Seagrave Social Club, to the action of the court in this regard.