## Commonwealth v. White Star Lines, Inc.

*James H. King*, of *McNees, Wallace & Nurick*, for appellant.

*Sidney Margulies*, Deputy Attorney General, for Commonwealth.

NEELY, J., March 16, 1959.—This matter is here on appeal by defendant, White Star Lines, Inc., from the action of the Board of Finance and Revenue in refusing defendant's petition for redetermination of the amount of fuel use tax for the month of April 1953, made by the Department of Revenue under the provisions of the Fuel Use Tax Act of January 14, 1952, P. L. (1951) 1965, 72 PS §2614.1, et seq. The administrative procedure for determination of the amount of the tax and the provisions for appeal are set forth in section 7 of the act, 72 PS §2614.7. The case was tried by this court without a jury under the Act of April 22, 1874, P. L. 109, 12 PS §688, in accordance with the agreement of the parties. Defendant was a Pennsylvania corporation.

The parties have stipulated the facts. We adopt their stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion we will discuss those facts which in our judgment are essential to the disposition of this case.

Defendant operated intrastate motor buses within this Commonwealth and within the State of West Virginia. It engaged in interstate transportation in Pennsylvania, Maryland, West Virginia and Ohio, and was certified by State and Federal regulatory commissions to carry on such transportation. Defendant also was authorized by the Interstate Commerce Commission to transport groups and parties from any point on its authorized lines to other points in the United States.

Defendant was licensed under the Fuel Use Tax Act of 1952.

As of December 31, 1955, defendant was dissolved by decree of the Court of Common Pleas of Franklin County. All its assets, including its claims against the Commonwealth for refund of fuel use taxes, were transferred and assigned to Potomac Edison Company, a Maryland corporation qualified to do business in Pennsylvania.

In its report of fuel use for the month of April 1953, defendant apportioned the fuel tax for that month on the basis of the percentage of fuel use of mileage traveled over Pennsylvania highways, as compared to the total miles traveled, and paid to the Commonwealth a tax based upon this apportionment. Defendant paid taxes for the privilege of using the highways in West Virginia and Maryland, which were in part covered by the amount of fuel placed in the supply tanks of the vehicles in Pennsylvania, carried into the States of West Virginia and Maryland and there consumed while transporting passengers in interstate commerce. The Maryland and West Virginia taxes are not excise taxes upon the use of fuel.

The Department of Revenue audited defendant's books and accounts at its offices in Washington, Pa., and imposed a fuel use tax upon all fuel placed in the buses of defendant within Pennsylvania during the month of April 1953. The excess tax assessment, which amounted to $242.27, was assessed on that fuel which defendant consumed in propelling its buses on the highways of States other than Pennsylvania. All the fuel, however, was placed in the fuel supply tanks of defendant's motor vehicles in Pennsylvania and the vehicles were propelled over public highways in this State before entry into other States. The amount of tax due the Commonwealth as assessed by the Depart-

ment of Revenue is $242.27 for the month of April 1953, which sum has been paid in full.

Defendant filed a petition for redetermination with the Department of Revenue. The Department denied the petition. Defendant's petition for review was denied by the Board of Finance and Revenue, whereupon this appeal was prosecuted. At the trial of this case without a jury, the facts stipulated by the parties were placed upon the record. Various exhibits and petitioner's tax return were received in evidence. Defendant contends that the tax in question violates the Federal Constitution because it offends against the fourteenth amendment (due process) and the commerce clause, article I, sec. 8.

An excise tax of three cents per gallon and a temporary tax of two cents per gallon were imposed by the Fuel Use Tax Act of 1952 on dealer-users upon the use of fuel to propel motor vehicles on the public highways of this Commonwealth. The following provisions of the act are pertinent to our determination of this case:

Section 2, 72 PS §2614.2:

"'Dealer-user' shall mean . . . any person who delivers or places fuels into the fuel supply tanks or other fueling receptacles or devices . . . of a motor vehicle, or who uses fuels within the meaning of the word 'use' as defined in this section. . . .

"'Use' shall mean and include . . . (b) the delivery or placing of fuels into the fuel supply tanks or other fueling receptacles . . . of a motor vehicle in this Commonwealth for use in whole or part for the generation of power . . . to propel such motor vehicle on the public highways of this Commonwealth."

Section 4, 72 PS §2614.4:

"A permanent excise tax at the rate of three cents ($.03) a gallon . . . is hereby imposed on all dealer-users upon the use of fuel within this Commonwealth, . . . The tax herein imposed shall not apply on fuels

not within the taxing power of this Commonwealth under the Commerce Clause of the Constitution of the United States."

Section 5, 72 PS §2614.5:

"Every dealer-user upon whom a tax is imposed by this act shall pay the tax into the State Treasury, . . ."

It seems to us that this language plainly taxes the transaction of placing the fuel into the supply tanks of vehicles to be driven on our public highways. This transaction occurs before the fuel is used in interstate commerce. The incidence of the tax is on a local activity, the delivery of the fuel for expected highway use.

In Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, 288 U. S. 249 (1933), the Supreme Court was concerned with the Tennessee statute which imposed an excise tax on the withdrawal of gasoline from storage for sale or other uses. The taxpayer was an interstate rail carrier and contended that the tax was invalid, inter alia, on the ground that it was a tax upon the use of gasoline in the railroad's business and was an unconstitutional burden on interstate commerce. The court, at pages 267-268, said:

"We cannot say that the tax is a forbidden burden on interstate commerce because appellant uses the gasoline, subsequent to the incidence of the tax, as an instrument of interstate commerce. Taxes said to burden interstate commerce directly when levied upon or measured by the operation of interstate commerce or gross receipts derived from it, are beyond the state taxing power, East Ohio Gas Co. v. Tax Commission, 283 U. S. 465, 470; Sprout v. South Bend, 277 U. S. 163. 170. 171; Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 297, . . .

". . . Here the tax is imposed on the successive exercise of two of those powers, the storage and withdrawal from storage of the gasoline. Both powers are completely exercised before use of the gasoline in

interstate commerce begins. The tax imposed upon their exercise is therefore not one imposed on the use of the gasoline as an instrument of commerce, and the burden of it is too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations. See Eastern Air Transport v. Tax Commission, 285 U. S. 147.

"Appellant objects that the tax violates the Fourteenth Amendment in that it is levied as a charge for the use of the highways which appellant does not use. But the levy is a tax, not a toll or charge for use of the highways, see Carley & Hamilton v. Snook, 281 U. S. 66, and the constitutional power to levy taxes does not depend upon the enjoyment by the taxpayer of any special benefit from the use of the funds raised by taxation. Carley & Hamilton v. Snook, supra; St. Louis & Southwestern R. Co. v. Nattin, 277 U. S. 157, 159."

We believe the burden of this fuel tax, to quote from the Supreme Court's decision in the Nashville case, is "too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations."

Our own Supreme Court has held that the solution of the question as to whether a State tax on transactions having interstate attributes falls within permissible limits depends on whether there are sufficient local incidents or activities to validate the tax: Wieman and Ward Company v. Pittsburgh, 381 Pa. 535 (1955); Keystone Metal Company v. Pittsburgh, 374 Pa. 323 (1953). See also International Harvester Co. v. Department of Treasury, 322 U. S. 340 (1944); Department of Treasury of Indiana v. Wood Preserving Corporation, 313 U. S. 62 (1941); Western Live Stock v. Bureau of Revenue, 303 U. S. 250 (1938); Virginia v. Imperial Coal Sales Co., Inc., 293 U. S. 15

(1934) ; Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, supra.

In General Trading Co. v. State Tax Commission of The State of Iowa, 322 U. S. 335, 338 (1944), the Supreme Court stated the relationship between the State taxing power and interstate commerce in the following terms:

". . . Of course, no State can tax the privilege of doing interstate business. See Western Live Stock v. Bureau, 303 U. S. 250. That is within the protection of the Commerce Clause and subject to the power of Congress. On the other hand, the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not diminish the protection which he may draw from a State to the upkeep of which he may be asked to bear his fair share. But a fair share precludes legislation obviously hostile or practically discriminatory toward interstate commerce. See Best & Co. v. Maxwell, 311 U. S. 454."

In Edelman v. Boeing Air Transport, Inc., 289 U. S. 249 (1933), the Supreme Court refused to enjoin the collection of a State excise tax which was levied upon the use of gasoline within a State, even though subsequently consumed in interstate commerce. The court held there was no violation of the commerce clause of the Federal Constitution. This case is particularly in point and we quote therefrom at pages 251-252, as follows:

". . . Issue is joined on the only question raised by the pleadings, whether the taxation of the gasoline which respondent withdraws from storage and uses for 'filling' its planes imposes an unconstitutional burden on interstate commerce. Hence we confine our decision to that question.

"As the statute has been administratively construed and applied, the tax is not levied upon the consumption

of gasoline in furnishing motive power for respondent's interstate planes. The tax is applied to the stored gasoline as it is withdrawn from the storage tanks at the airport and placed in the planes. No tax is collected for gasoline consumed in respondent's planes either on coming into the state or on going out. It is at the time of withdrawal alone that 'use' is measured for the purposes of the tax. The stored gasoline is deemed to be 'used' within the state and therefore subject to the tax, when it is withdrawn from the tanks. Compare Nashville, Chattanooga & St. Louis Ry. v. Wallace, 288 U. S. 249; Gregg Dyeing Co. v. Query, 286 U. S. 472; Hart Refineries v. Harmon, 278 U. S. 499; Bowman v. Continental Oil Co., 256 U. S. 642.

"A state may validly tax the 'use' to which gasoline is put in withdrawing it from storage within the state, and placing it in the tanks of the planes, notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce. Such a tax cannot be distinguished from that considered and upheld in Nashville, Chattanooga & St. Louis Ry. v. Wallace, supra."

We believe the term "use" in the Fuel Use Tax Act is equivalent in its meaning to the definition of that term in the Edelman case It is upon the delivery of the fuel to the supply tank "alone that 'use' is measured for the purposes of the tax."

In Central Vermont Ry., Inc. v. Campbell, 108 Vt. 510, 192 Atl. 197, the Supreme Court of Vermont held that an excise tax upon the sale or use of gasoline destined to be employed to furnish motor power for interstate transportation, if imposed before such transportation has commenced, is levied on a purely domestic transaction, places no forbidden burden on interstate commerce and comes within no Federal constitutional prohibition; further, that a statute imposing a tax on the "use" of gasoline within a State

would be unconstitutional as imposing an unreasonable burden on interstate commerce if intended to tax consumption of gasoline in interstate commerce, but if intended to tax withdrawal from storage before consumption, would be constitutional as a tax on the domestic transaction completed before interstate commerce began, and that a State may tax property used to carry on interstate commerce if such tax places no direct burden on that commerce. We agree with these conclusions of the Vermont court.

In Lake Shore Coach Lines, Inc. v. Alger, 327 Mich. 146, 41 N. W. 2d 503, the Michigan Supreme Court upheld a tax on the use of diesel fuels for vehicles propelled by diesel engines over the highways of that State. The statute applied to both interstate and intrastate commerce, as does the Fuel Use Tax Act with which we are here concerned. The taxpayer contended that the Michigan statute violated the commerce clause, article I, sec. 8, and the fourteenth amendment to the Federal Constitution. The court held that the tax was nondiscriminatory as between interstate and intrastate commerce, and that it did not offend against the provisions of the Federal Constitution.

Defendant points out that West Virginia and Maryland have exacted a tax apportioned on fuel consumed in those States as compensation for the use of their highways. The tax under the Act of 1952 is not imposed for the privilege of using the highways in this State. It is an excise tax on a transaction fully completed before the fuel is used in interstate commerce.

In Shirks Motor Express Corporation v. Messner, 375 Pa. 450, 455 (1953), Mr. Justice Chidsey, speaking for our Supreme Court said:

"It is well settled that a State does not have the power to tax interstate commerce as such: . . . It is equally well settled that a State may, consistently with the Commerce Clause, impose upon vehicles engaged

in interstate commerce a reasonable, nondiscriminatory excise tax as compensation for the use of its highways: . . ."

This conclusion is supported by a long line of authorities, permitting taxes to be levied by States as tolls or charges for the use of State highways: Capitol Greyhound Lines v. Brice, 339 U. S. 542 (1950); Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana, 332 U. S. 495 (1947); Dixie Ohio Express Co. v. State Revenue Commission, 306 U. S. 72 (1939); Morf v. Bingaman, 298 U. S. 407 (1936); Interstate Busses Corporation v. Blodgett, 276 U. S. 245 (1928); Clark v. Poor, 274 U. S. 554 (1927); Hendrick v. State of Maryland, 235 U. S. 610 (1915); Interstate Transit, Incorporated v. Lindsey 283 U. S. 183 (1931).

These authorities upholding State taxes on interstate commerce, when reasonably related to highway use, are not controlling here in our judgment. While we certainly do not attempt to pass upon the validity of either the Maryland or West Virginia statutes, it would seem to us that there is no double taxation if the statutes in these latter States are imposed for use of their highways. Where the tax is imposed as compensation for the use of the highways, it is imposed on the theory that interstate commerce should bear its fair share of the expense incident to maintaining the highways which that commerce is using. That interstate motor carriers must compensate a State for using its highways should not deny another State the right to exercise its taxing power with respect to a purely local transaction.

The delivery of fuel to supply tanks of motor vehicles to be propelled over the public highways of Pennsylvania is a definite and valuable local privilege. It is this privilege that is taxed as a use. This Pennsylvania excise tax assessed against defendant was dif-

ferent in character and in its incidence from any taxes subsequently levied by West Virginia and Maryland on defendant's interstate transportation.

It was a requirement that these out-of-State taxes imposed as compensation for the use of the highways in those two States should bear a reasonable relationship to defendant's use of those highways. The Pennsylvania fuel use tax was imposed on an entirely different theory, and its validity is not to be tested by any such requirement.

In determining the validity of this tax assessment, we must consider the nature and value of the privilege taxed as a local use. And for the purpose of this case we must, of course, determine the questions raised by defendant, that is, whether the tax violates the due process clause or other provisions of the fourteenth amendment, and whether the burden placed on interstate commerce by this tax is direct or indirect and remote. In our judgment, in this tax assessment there has been no violation of the Federal Constitution as to due process or other provisions of the fourteenth amendment, or as to the commerce clause, article I, sec. 8.

Defendant complains that the title does not meet the requirements of article III, sec. 3, of the Constitution of this Commonwealth. We disagree. It is well recognized that it is not required that the title of an act be an index to its provisions. On this point the Supreme Court in Commonwealth v. American Gas Company, 352 Pa. 113, 118 (1945), said:

". . . In Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840, Kelley v. Earle, 325 Pa. 337, 190 A. 140, and Gumpert's Estate, 343 Pa. 405, 23 A. 2d 479, we had occasion to review this constitutional provision and to assert the principles governing its application. As stated in Gumpert's Estate, at page 407, by Mr. Justice Horace Stern: 'It is unnecessary to elaborate

upon the oft-repeated principle that all the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. "Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III." ' " See also Turco Paint & Varnish Company v. Kalodner, 320 Pa. 421, 436 (1936).

The title of the act in part reads: "An act imposing a permanent and a temporary State tax on fuels used within the Commonwealth in internal combustion engines for the generation of power to propel motor vehicles using the public highways." As to notice of the general subject matter of the Fuel Use Tax Act, we believe that the sections of the act which we have cited in this opinion are in themselves sufficient to show that the title is germane to the subject matter with respect to those matters now under consideration.

There is a provision in the statute relating to importation of fuels into the State. The act also contains the provision that the delivery of fuels to the supply tanks of motor vehicles constitutes a conclusive presumption that the fuel so delivered is to be used in propelling the motor vehicles on the public highways of this Commonwealth. The presumption has not been invoked by the Commonwealth nor has it been a factor in our decision. Since the statute is severable, there has been no occasion to consider either the presumption or the importation provisions of the statute. It will be time enough to do so when questions are presented that involve these portions of the act.

A person cannot challenge the constitutionality of a statute who is not affected thereby: Turco Paint & Varnish Company v. Kalodner, supra, at 436; Knowles' Estate, 295 Pa. 571 (1929); Gentile v. Philadelphia & Reading Ry., 274 Pa. 335 (1922); Commonwealth v. Dollar Savings Bank, 259 Pa. 138 (1917); Mesta Machine Co. v. Dunbar Furnace Company, 250 Pa. 472, 476 (1915); Erie Lighting Company v. Pennsylvania Public Utility Commission, 131 Pa. Superior Ct. 190, 195 (1938). Defendant cannot complain about sections of the act which do not affect this case.

The Commonwealth's requests for findings of fact and conclusions of law are affirmed. Defendant's second request for conclusion of law is affirmed. Because defendant's other requests for conclusions of law are inapposite, in the light of the disposition we make of this matter, they are refused.

### Conclusions of Law

1. The tax assessed on the delivery of fuel in the supply tanks of defendant's motor vehicles for use on the public highways of Pennsylvania does not violate the commerce clause, article I, sec. 8, of the Federal Constitution, even though the vehicles were subsequently used in interstate commerce, and apportioned taxes were paid for the use of highways by these vehicles in other States, nor does such tax contravene the fourteenth amendment of the Federal Constitution.

2. The determination of the Department of Revenue that there was an excess tax due in the amount of $242.27 for April 1953, was in accordance with the law and the excess tax was properly and lawfully assessed in that amount.

3. The Fuel Use Tax Act of 1952 is an excise tax on local use, and its incidence is on the privilege of placing the fuel into defendant's supply tanks, in

which transaction the fuel is used within the meaning of the act.

4. The appeal should be dismissed and judgment entered for the Commonwealth.

5. The amount of the tax having been paid in full, judgment should be entered for the Commonwealth, and upon payment of the costs the judgment should be marked satisfied.

Accordingly, therefore, we enter the following

## Order

And now, March 16, 1959, it is directed that judgment be entered in favor of the Commonwealth, unless exceptions be filed within 30 days. The judgment shall be marked satisfied upon payment of costs. The prothonotary is directed to notify the parties or their counsel of this order forthwith.

## Opinion sur Exceptions

NEELY, J., August 3, 1959.—Defendant has filed 22 exceptions to the court's opinion of March 16, 1959. These exceptions relate to the court's conclusions of law, its failure to affirm defendant's requests for conclusions, and to the court's decree. We think it is not necessary to discuss each of these exceptions because they relate to matters considered and fully covered in the court's opinion which was rendered after full argument before the court en banc.

This case involves the fuel use tax assessed against defendant for the month of April 1953, under the Fuel Use Tax Act of January 14, 1952, P. L. (1951) 1965, 72 PS §2614.1, et seq. The Department of Revenue levied the tax on all fuel placed in defendant's tanks during that month. We approved the assessment and accordingly entered a judgment nisi in favor of the Commonwealth. Defendant's exceptions attack the validity of that judgment.

Defendant, a motor carrier engaged in the transportation of persons for hire in this Commonwealth, argues that the Fuel Use Tax Act of 1952 imposed a tax in certain instances on the use of fuels, combustible gases and liquids, in motor vehicles propelled over the highways of Pennsylvania, and that the tax can only be levied to the extent that the fuels are consumed in Pennsylvania. Defendant contends that the tax was levied as compensation for the use of Pennsylvania highways, and that it was an undue and unconstitutional burden on its interstate commerce to assess the tax on the basis of the full amount of fuel placed in defendant's tanks during that month because a portion of that fuel was not consumed on our highways.

We rejected defendant's argument and concluded that the tax was not imposed as compensation for the use of Pennsylvania highways, but that it was an excise tax on a local transaction, the placing of fuel in the supply tanks of defendant's motor vehicles. We held that the use which was taxed was the delivery of fuel into defendant's tanks. Basically, all of defendant's exceptions attack this conclusion.

The question we now have before us may be stated thus, did the Fuel Use Tax Act of 1952 impose a tax as compensation for the use of the highways of this Commonwealth, or was the tax imposed on the delivery of fuel into defendant's tanks, and if it was, was it levied upon a purely local activity? Stated another way, was the incidence of this tax on the use of the highways, or was it on the local transaction of placing fuel into the tanks?

If the tax was imposed as compensation for the use of Pennsylvania highways, then of course the full amount of the fuel placed in defendant's tanks could not have been taxed because a portion of it was consumed on the highways of Maryland and West Virginia. On the other hand, if the use that was made

subject to the tax was the delivery of fuel into the tanks, and the incidence of the tax was on this local activity, then the tax assessed in the instant case would be valid.

We pointed out in our opinion that the tax was imposed upon the "use of fuel," section 4, 72 PS §2614.4, and that in section 2, 72 PS §2614.2, it is provided that the term " 'Use' shall mean and include . . . (b) the delivery or placing of fuels into the fuel supply tanks or other fueling receptacles. . . ." Our reasoning on this point is made clear in our first opinion.

Defendant contends that because under the statutory definition "use" means the delivery into the fuel tanks of motor vehicles in this Commonwealth "for use in whole or part for the generation of power . . . to propel such motor vehicle on the public highways," that the tax must be interpreted as being imposed as compensation for the use of our highways. We disagree. The act applies to the delivery of fuel into motor vehicles where those vehicles travel on the highways, but the act does not state directly or inferentially that it is imposed as compensation for highway use.

Defendant argues that the court, in considering the statutory definition of the term "use" in section 2, supra,* cut off that definition after making reference to "the delivery or placing of fuels," without considering the subsequent language in the section with respect to its use in motor vehicles "to propel such

---

* The pertinent part of the definition in section 2 reads as follows:

" 'Use' shall mean and include . . . (b) the delivery or placing of fuels into the fuel supply tanks or other fueling receptacles . . . of a motor vehicle in this Commonwealth for use in whole or part for the generation of power . . . to propel such motor vehicle on the public highways of this Commonwealth. . . ."

motor vehicle on the public highways." Our view is that this language with respect to propelling motor vehicles on the highways defines the area and scope of the application of this tax, and provides that the act applies to the placing of fuel in the tanks of motor vehicles that are to be propelled on our highways.

It is a familiar rule of statutory construction that a statute should be interpreted so as to give effect to all its words. No language is to be rejected as surplusage if an interpretation can be placed upon the statute which will give all its language reasonable meaning: Commonwealth ex rel. Schnader v. King, 312 Pa. 412, 415 (1933) ; Barclay White Co. v. Unemployment Compensation Board of Review, 356 Pa. 43, 48 (1947) ; Fazio Unemployment Compensation Case, 164 Pa. Superior Ct. 9, 12 (1949) ; Commonwealth v. Daly, 147 Pa. Superior Ct. 545, 551 (1942) ; section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551.

We have ascribed to the word "use" the meaning which the legislature clearly gave that word in making reference to the delivery or placing of fuel in supply tanks. By holding that the balance of the section in defining the term "use" describes the scope in which the tax operates, we do thereby ascribe to section 2 full meaning to all the language in this section.

To support the contention which defendant makes, namely, that the word "use" shall mean "use of the highways" would require that we completely disregard the clear provisions of this section, that the term "use" means "the delivery or placing of fuels" in supply tanks. We think we have not only adopted the clear and express provisions of the statute with respect to the meaning of the word "use", but have also given it the only meaning that it could have without doing violence to the rule of statutory construction which we have herein mentioned.

Defendant, a Pennsylvania corporation engaged in interstate commerce by motor carrier, was in the same position as appellant in Shirks Motor Express Corporation v. Messner, 375 Pa. 450 (1953), cited in our earlier opinion, and likewise was subject to the provisions of the Act of June 22, 1931, P. L. 694, as amended, which by section 3 thereof, 72 PS §2185, imposed an excise tax on the gross receipts of common carriers by motor vehicle.

The Act of 1931 imposed a gross receipts tax as compensation for the use of the highways. The title of the act provides: "Imposing a tax on gross receipts as an excise on the use of the public highways by certain owners or operators of motor vehicles transporting passengers and property for hire." And section 2 of the Act of 1931, as amended, 72 PS §2184, states that: "Each company shall pay an excise tax for the use of the highways of this Commonwealth."

In Transamerican Freight Lines v. Commonwealth, 396 Pa. 64, 66 (1959), the Supreme Court, in interpreting the Act of 1931, said:

" 'The Act of 1931 imposes an excise tax for the use of the highways of this Commonwealth upon companies engaged in the business of carrying passengers or property for hire over the highways of this Commonwealth, at the rate of eight mills upon the dollar upon the gross receipts of such companies. Under the statute, where a company operates over routes in interstate transportation the tax is determined by an apportionment formula. In this formula the numerator of the fraction is the number of miles operated in Pennsylvania; the denominator is the total miles operated; and the multiplicand is the gross receipts of the carrier from all of its operations.' "

The Act of 1931 by its express provisions set up a statutory formula by which the amount of the tax was to be computed based upon the use of our high-

ways by carriers in interstate commerce. The intention to impose the tax as compensation for the use of the highways is clearly expressed.

There is absent in the Fuel Use Tax Act of 1952 any clear expression of legislative intent to impose this tax as compensation for the use of Pennsylvania highways. The legislature knew how to levy a compensatory tax for highway use and did so in the Act of 1931 by language that was free from ambiguity. Defendant asks us to hold that the Fuel Use Tax Act of 1952, in the absence of an expressed legislative intent, nevertheless by implication imposed a tax as compensation for the use of the highways. Such a holding we think would be contrary to the provisions of the act itself.

There is nowhere set forth in the Act of 1952 any formula by which the court could be expected to apportion this tax. Defendant argues that the court should construct a formula based upon the number of miles of highway use, similar to that mentioned in the Transamerican case, supra. The formula in that case, however, was based upon the express provisions of the statute. We think the absence of any formula for determining the amount of tax based upon highway use is strong indication of the legislative intent that it was not contemplated that the tax assessed under the Fuel Use Tax Act should be imposed as compensation for the use of our highways.

When the legislature desired to impose a compensatory tax for the use of the highways of the Commonwealth, it did so by the Act of 1931 and its amendments in unmistakable language. Not only, in our judgment, is such language absent here, but on the contrary the definition of the term "use" in the Fuel Use Tax Act shows that the legislature intended that the use which was to be taxed was the local transaction, namely, the incident of placing the fuel in the

supply tanks of motor vehicles. This interpretation, in our opinion, is in accord with the several decisions of the Supreme Court of the United States and other authorities mentioned in our earlier opinion.

Defendant has cited Department of Revenue v. Greyhound Corporation, 321 S. W. 2d 60 (Ky., 1959), decided by the Court of Appeals of Kentucky on February 13, 1959, and claims that this decision supports its contention that the Fuel Use Tax Act imposed a tax as compensation for the use of our highways. An excise tax in Kentucky was levied on the fuels "used by the special fuels dealer to propel motor vehicles on the public highways." The court applied to this language its literal meaning and held that the tax was on such fuels as were used to propel vehicles, and limited the tax to the use on the highways within the confines of the State. To us it seems that by express language in the Kentucky statute the tax was limited to the use within the confines of the State of Kentucky and was based upon highway use.

We gave the reasons in our original opinion, and have herein reiterated them, as to why the use involved here upon which the tax is levied is the delivery of fuel into the supply tanks of motor vehicles. It is a withdrawal tax and the language with respect to propelling motor vehicles over the highways, as we have hereinabove mentioned, is merely descriptive of the scope in which the tax operates, there being certain defined situations which are excepted from the provisions of the act.

The guiding formulation for adjudicating a tax measure is that in passing on its constitutionality we are concerned only with its practical operation, not its definition or the precise form of descriptive words which may be applied to it: Wisconsin v. J. C. Penney Co., 311 U. S. 435, 443, 444 (1940); Spector Motor Service, Inc. v. O'Connor, 340 U. S. 602, 606 (1951).

We are convinced that in its practical operation the tax assessed under the Fuel Use Tax Act of 1952 is on the withdrawal of fuel from the storage tanks and delivery into the supply tanks of motor vehicles and, as we have said, the use which is taxed is this local transaction. For all these reasons, the exceptions of defendant must be overruled, and accordingly we herewith enter the following

*Order*

And now, August 3, 1959, the exceptions of defendant are severally overruled and it is directed that judgment in the sum of $242.27 be entered in favor of the Commonwealth and against defendant. The judgment shall be marked satisfied upon the payment of costs by defendant herein.